NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0396n.06
Filed: June 14, 2007

Nos. 05-1861 & 05-1966

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| National Labor Relations Board, | ) | |
| | ) | |
| Petitioner/Cross-Respondent, | ) | **ON APPEAL** From a Final |
| | ) | Order of the National Labor |
| v. | ) | Relations Board |
| | ) | |
| St. Mary's Acquisition Co., Inc. d/b/a | ) | |
| St. Mary's Nursing Home, | ) | |
| | ) | **OPINION** |
| Respondent/Cross-Petitioner. | ) | |
| _____ | ) | |

**Before: BOGGS and DAUGHTREY, Circuit Judges, and MILLS, District Judge.**[*]

**RICHARD MILLS, District Judge.**

## I. HISTORY

St. Mary's Acquisition Co., Inc. d/b/a St. Mary's Nursing Home (hereinafter

"St. Mary's") operates a nursing home in St. Clair Shores, Michigan where James

Gordon worked as a certified nursing assistant. Gordon actively participated in a

_____

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

1

successful organizing campaign conducted by Local 79, Service Employees International Union, AFL-CIO (the "Union") in the summer of 2002.

Toward the end of the summer, St. Mary's alleged that Gordon falsified a resident's feeding documents. St. Mary's discharged Gordon for the falsification on August 16, 2002. Gordon filed an unfair labor practice charge alleging that St. Mary's discharged him "in retaliation for his union and other protected activities" in violation of National Labor Relations Act (the "NLRA") §§ 8(a)(3) and (1).[1]

Based on Gordon's allegations, the National Labor Relations Board's (the "NLRB") General Counsel filed a consolidated complaint against St. Mary's on February 3, 2003. The parties settled the case on June 2 and Gordon was reinstated with backpay. Among other things, the settlement agreement stated:

> The General Counsel reserves the right to use the evidence obtained in the investigation and prosecution of the [complaint allegations] for any relevant purpose in the litigation of this or any other case[s], and a judge, the Board and the courts may make findings of fact and/or conclusions of law with respect to said evidence.

Gordon resumed work on July 14 and served as a member of the Union's negotiating committee in a July 27 contract negotiation. St. Mary's suspended him

---

[1] Gordon also alleged a § 8(a)(4) violation, arguing that St. Mary's disciplined him in retaliation for filing the unfair labor practices claim in 2002. ALJ George Carson II dismissed the § 8(a)(4) claim and the dismissal is uncontested.

on August 4, claiming he was too rough when attending nursing home residents Pat Johnson and Marie Babcock. When told of this, Gordon laughed at the "trumped up" charges and said how he would be going on vacation. St. Mary's terminated Gordon on August 6, allegedly for his treatment of Johnson and Babcock.

The NLRB issued a complaint on October 30, 2003, contending that St. Mary's actions violated §§ 8(a)(1), (3) and (4) because the suspension and discharge were intended to retaliate against Gordon for his support of the Union and to discourage other employees from engaging in protected activities. At a January 12, 2004, hearing before Administrative Law Judge ("ALJ") Pargen Robertson, the NLRB's General Counsel called Gordon as its sole witness. When the General Counsel asked Gordon about the settled 2002 case, St. Mary's objected as to the case's relevance. The General Counsel explained that the 2002 case was relevant to St. Mary's "hostility" toward Gordon's prior union activity, but ALJ Robertson sustained the objection as being "outside the scope of this complaint." ALJ Robertson allowed the General Counsel to make an offer of proof; however, he ultimately rejected the evidence.

After St. Mary's cross-examined Gordon, the General Counsel rested his case and St. Mary's moved to dismiss the complaint. ALJ Robertson ruled from

the bench, granting the motion because the General Counsel failed to establish a *prima facie* case of an NLRA violation. In particular, ALJ Robertson determined that the General Counsel failed to show St. Mary's acted with anti-union animus.

The General Counsel filed exceptions with the NLRB arguing that the 2002 case should have been considered as evidence of St. Mary's historical anti-union animus. The NLRB agreed with the General Counsel and remanded the case so that evidence from the 2002 case could be presented. *See St. Mary's Acquisition Co., Inc. d/b/a St. Mary's Nursing Home and James Gordon*, 342 NLRB 979, 980-981 (2004). The NLRB also reassigned the case to ALJ George Carson II due to the General Counsel's concerns about ALJ Robertson's impartiality. *Id.* at 980, n.3.

The case was retried on November 22, 2004. The facts showed that Gordon had been a Union representative at a July 27, 2003, negotiation that St. Mary's administrator Melanie Belfry attended. Belfry spoke to Gordon's attorney concerning his 2002 unfair labor practices claim and she signed the notice that reinstated Gordon in order to resolve the 2002 claim. Despite her actions, Belfry claimed at the administrative hearing that she did not know of any relationship between Gordon and the Union when she terminated him. ALJ Carson found Belfry's claim incredible and he emphasized how suspicious it was that St. Mary's

4

terminated Gordon within a month of his reinstatement.

Moreover, ALJ Carson rejected St. Mary's purported basis for disciplining Gordon, finding no evidence that Gordon physically abused residents Johnson or Babcock. Gordon denied any abuse and there was no evidence of mistreatment in the physical examinations or social worker's report. Although Belfry testified that Johnson said she was afraid of Gordon, Belfry did not memorialize Johnson's purported fear at the time of the alleged complaint. Furthermore, St. Mary's never gave Gordon an opportunity to respond to the misconduct claims before disciplining him. The ALJ considered this to be evidence of St. Mary's failure to conduct a meaningful investigation and regarded it as indicia of discriminatory intent. The ALJ also found it probative that St. Mary's failed to rescind the disciplinary action against Gordon even when a State of Michigan investigator's report contained no finding of abuse.

Based on this and other evidence, ALJ Carson issued a January 26, 2005, Supplemental Decision finding that St. Mary's violated §§ 8(a)(1) and (3). ALJ Carson recommended that St. Mary's be required to cease and desist all unlawful labor practices, fully reinstate Gordon as to position, pay, and benefits, remove any reference to the unlawful discharge from its files, and post a remedial notice. Neither St. Mary's nor the General Counsel filed exceptions to ALJ Carson's

5

supplemental decision. On April 14, 2005, the NLRB issued a Supplemental Order adopting his findings, conclusions, and recommended order. St. Mary's appealed.

## II. JURISDICTION

"This court has jurisdiction over petitions to review or enforce orders issued by the NLRB." *Pleasantview Nursing Home, Inc. v. NLRB*, 351 F.3d 747, 752 (6th Cir. 2003) (citing 29 U.S.C. § 160(e)). There is no statutory time limit for the filing of a petition for review of a final order of the NLRB. *See* 29 U.S.C. § 160(e), (f).

## III. STANDARD OF REVIEW

It appears that the NLRB remanded pursuant to 29 C.F.R. § 102.48(d)(1). *See St. Mary's Acquisition Co.*, 342 NLRB at 981. This regulation states that:

> A party to a proceeding before the Board may, because of extraordinary circumstances, move for reconsideration, rehearing, or reopening of the record after the Board decision or order. A motion for reconsideration shall state with particularity the material error claimed and with respect to any finding of material fact shall specify the page of the record relied on. A motion for rehearing shall specify the error alleged to require a hearing de novo and the prejudice to the movant alleged to result from such error. A motion to reopen the record shall state briefly the additional evidence sought to be adduced, why it was not presented previously, and that, if adduced and credited, it would require a different result. Only newly discovered evidence, evidence which has become available only since the close of the hearing, or evidence which the Board believes should

6

have been taken at the hearing will be taken at any further hearing. See 29 C.F.R. § 102.48(d)(1).

"The decision to grant or deny a new hearing under [Section 102.48(d)(1)] is within the sound discretion of the Board, and will only be disturbed by a reviewing court if the challenging party establishes an abuse of discretion." *Dayton Hudson Dept. Store Co., a Div. of Dayton Hudson Corp. v. NLRB*, 987 F.2d 359, 366 (6th Cir. 1993) (quoting *May Dep't Stores Co. v. NLRB*, 897 F.2d 221, 230 (7th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 245, 112 L.Ed.2d 204 (1990)). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (quotation omitted), *cert. denied,* 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997).

The court reviews the NLRB's "legal conclusions *de novo* and its factual findings under a substantial evidence standard." *Harborside Healthcare, Inc. v. NLRB*, 230 F.3d 206, 208 (6th Cir. 2000) (citations omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (internal quotation marks and citation omitted).

7

The court is "not free to substitute [its] judgment for that of the Board simply because [it] would have made a different decision had [it] heard the case *de novo* . . . ."  *OPW Fueling Components v. NLRB*, 443 F.3d 490, 495 (6th Cir. 2006), *quoting NLRB v. Pipefitters Union Local No. 120,* 719 F.2d 178, 181 (6th Cir. 1983).  The Board's decisions "must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both."  *Universal Camera Corp.*, 340 U.S. at 490, 71 S.Ct. 456.  Conflicts in testimony give rise to issues of fact and credibility that are the province of the Board to resolve.  *NLRB v. Aquatech, Inc.,* 926 F.2d 538, 544 (6th Cir. 1991).

## IV.  DISCUSSION

### A.      Remanding to Allow Evidence From the 2002 Case

The 2002 settlement agreement states:

> The General Counsel reserves the right to use the evidence obtained in the investigation and prosecution of the [complaint allegations] for any relevant purpose in the litigation of this or any other case[s], and a judge, the Board and the courts may make findings of fact and/or conclusions of law with respect to said evidence.

ALJ Robertson should not have disregarded the General Counsel's reservation of

right by excluding evidence of the settled 2002 case. Furthermore, it is a long-standing precedent that such evidence is admissible. *See Black Entertainment Television*, 324 NLRB 1161, 63 (1997) ("Evidence involved in a settled case may properly be considered as background evidence in determining the motive or object of a respondent in activities occurring either before or after the settlement, which are [currently] in litigation.").

In any event, St. Mary's does not discuss any authority to show the NLRB abused its discretion by remanding to allow the General Counsel to present evidence from the 2002 case. It merely states that the General Counsel never gave notice that it intended to introduce evidence from the 2002 case; the General Counsel had ample evidence to prove anti-union animus—if any existed—through other available evidence; and the General Counsel referred to the 2002 case in its offer of proof, and the facts still were insufficient to establish anti-union animus. Considered alone or together, these things do not show that the NLRB abused its discretion.

Moreover, *Dayton Hudson Dept. Store Co.* supports the NLRB's decision to remand. In *Dayton Hudson Dept. Store Co.*, the NLRB refused to reopen a record to allow the General Counsel to present evidence of forged authorization cards. The General Counsel intended to use the cards to help overturn an election by

showing that the cards had been used to create a false sense of union support. The court determined that the NLRB abused its discretion by failing to grant the motion to reopen the record since evidence of the forged cards was relevant to determining the extent of union support. 987 F.2d at 367.

As in *Dayton Hudson Dept. Store Co.*, a remand was in this case necessary to decide an essential issue. St. Mary's alleged anti-union animus was highly relevant to the unfair labor practices claims and evidence from the 2002 settlement provided a history of St. Mary's conduct. Accordingly, the NLRB acted within its discretion by remanding the case to allow the General Counsel to present evidence of the 2002 settlement.[2]

### B. Violations of NLRA §§ 8(a)(1) and 8(a)(3)

The General Counsel argues that § 10(e) of the NLRA precludes the court from reviewing whether St. Mary's violated §§ 8(a)(1) and (3) of the NLRA because St. Mary's never filed exceptions to ALJ Carson's findings. Section 10(e) provides that:

---

[2] St. Mary's also claims ALJ Carson should not have remanded because the General Counsel's motion violated § 102.48(d)(1) by failing to cite a specific section and page when filing an objection. Although the NLRB failed to comply with § 102.48(d)(1), the violation was a technicality that does not rise to an abuse of discretion.

> No objection that has not been urged before the Board, its member, agent or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.

*Id.*

St. Mary's does not argue that any extraordinary circumstances exist here. Instead, it contends that the court can review the §§ 8(a)(1) and (3) violations because the General Counsel argued those violations in the exceptions it filed to ALJ Robertson's dismissal. St. Mary's relies on *Awrey Bakeries, Inc. v. NLRB*, 59 F.App'x 690, 692-693 (6th Cir. 2003) (unpublished), to support its position. In *Awrey Bakeries, Inc.*, the court stated that "a party could seek judicial review on a matter it did not raise before the Board if another party to the enforcement proceedings adequately raised the issue." *Id.* at 693 (citing *NLRB v. United States Postal Serv.*, 833 F.2d 1195, 1202 (6th Cir. 1987) (finding no bar to judicial review of employer's and union's claim where General Counsel's own brief in support of her exceptions raised the issue) (additional citation omitted)). Because *Awrey Bakeries* raised issues to the Board that concerned both defendants, the court held that its precedent in *NLRB v. United States Postal Serv.* allowed review of the judgment. *Awrey Bakeries, Inc.*, 59 F.App'x. at 692-93.

St. Mary's reliance on *Awrey Bakeries* is misplaced. Unlike the parties in

11

that case, no one here filed exceptions to ALJ Carson's report with the Board.

Thus, neither St. Mary's nor the General Counsel raised any issues to the Board.

For this reason, *Awrey Bakeries* and similar cases do not aid St. Mary's or excuse

its failure to comply with § 10(e). The court is, therefore, precluded from

deciding whether the ALJ correctly determined that St. Mary's violated §§ 8(a)(1)

and (3). This preclusion essentially means that ALJ Carson's Supplemental Order

is unchallenged. Accordingly, the NLRB is entitled to summary enforcement of

that order. *See NLRB v. General Fabrications Corp.,* 222 F.3d 218, 232 (6th Cir.

2000) (finding the NLRB is entitled to summary enforcement of unchallenged

portions of orders)).[3]

## V. CONCLUSION

For the reasons stated above, we AFFIRM the NLRB's decision to remand.

We further conclude that because the court is precluded from considering the §§

8(a)(1) and (3) violations, the NLRB is entitled to summary enforcement of ALJ

Carson's Supplemental Order.

---

[3] Even if this were not so, substantial evidence supports ALJ Carson's findings of St. Mary's unfair labor practices.